# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND RAMIREZ, et al.,<br>Plaintiffs,<br>vs.<br>THE GEO GROUP, et al.,<br>Defendants. | CASE NO. 18cv2136-LAB (MSB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION [Dkt. 50];**<br><br>**ORDER GRANTING JOINT MOTIONS TO SEAL [Dkts. 48, 84]** |

Currently before the Court is Plaintiff Raymond Ramirez's Motion for Class Certification. For the reasons below, that motion is granted in part and denied in part.

## BACKGROUND

Defendant GEO Group and its subsidiaries own and operate private prisons throughout the United States. From 2000 until 2017, Plaintiff Raymond Ramirez served as a corrections officer at the Western Region Detention Facility ("the Facility") in San Diego. The Facility is owned by GEO Group subsidiary GEO Corrections and Detentions, LLC (collectively, "GEO") and houses between 700 and 770 federal detainees awaiting trial, sentencing, or a hearing. At issue in this case are Ramirez's allegations that GEO violated various provisions of California labor law by, among other things, failing to provide adequate meal and rest breaks, failing to reimburse employees for job-related expenses, and improperly rounding employee time.

Based on these and other alleged violations of California law, Ramirez brought this suit in San Diego County Superior Court in August 2018. GEO timely removed the case to this Court, and Ramirez now seeks class certification. Ramirez originally purported to represent *all* correctional officers employed by GEO in California, but now limits the putative class to only those correctional officers employed by GEO at the San Diego Facility from August 9, 2014 to present. GEO opposes Ramirez's motion, arguing that its policies do not violate California law and that Ramirez cannot meet the requirements for class certification.

## LEGAL STANDARD

### a. Class Certification Generally

"A party seeking class certification must satisfy the requirements of Fed. R. Civ. P. 23(a) and the requirements of at least one of the categories under Rule 23(b)." *Wang v. Chinese Daily News*, 737 F.3d 538, 542 (9th Cir. 2013).

The four requirements of Rule 23(a) are:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

These are commonly referred to as the numerosity, commonality, typicality, and adequacy requirements. The Court must perform "a rigorous analysis [to ensure] that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 345 (2011). Ramirez seeks certification under Rule 23(b)(3), which contains two additional requirements: (1) that common questions predominate over individualized ones and (2) that a class action is the superior mechanism for dispute resolution.

"In determining the propriety of a class action, the question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178

(1974). The Court considers the merits of the underlying claims to the extent they overlap with the Rule 23(a) analysis, but it does not determine whether Ramirez actually could prevail on those claims. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011).

The Court must generally accept the substantive allegations made in the complaint as true, but it must also consider the nature and range of proof necessary to establish those allegations. *See In re Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982). "In addition, the court may consider supplemental evidentiary submissions of the parties." *Keilholtz v. Lennox Hearth Products Inc.*, 268 F.R.D. 330, 335 (N.D. Cal. 2010). "Neither the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies Rule 23." *United Steel, Paper & Forestry v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010) (citation and brackets omitted).

  **b.**  **Rule 23(a)**

Commonality requires that there be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). "What matters to class certification is not the raising of common questions . . . but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350. The commonality requirement is construed permissively, and indeed less rigorously than the predominance requirement of Rule 23(b)(3). "All questions of fact and law need not be common to satisfy the rule." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). One "significant question of law or fact" common to the class may be sufficient to warrant certification. *Abdullah v. U.S. Sec. Associates, Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012)).

Typicality under Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). The representative claims don't need to be "substantially

identical" to those of absent class members, just "reasonably coextensive." *Hanlon*, 150 F.3d at 1020.

Rule 23(a)(4) permits certification of a class only if the "representative parties will fairly and adequately protect the interests of the class." This factor requires that the lead plaintiff not have conflicts of interest with the proposed class, and that the lead plaintiff is represented by qualified and competent counsel who will vigorously prosecute the action on behalf of the class. *Hanlon*, 150 F.3d at 1020.

### c. Rule 23(b)

In addition to establishing commonality, Ramirez must still prove that common questions of law or fact predominate over questions affecting only individual class members. Fed. R. Civ. P. 23(b)(3). The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (quotation omitted).

Superiority requires consideration of four factors. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001). They are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). When analyzing these factors, the Court must "focus on the efficiency and economy elements of the class action so that cases allowed under

subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser*, 253 F.3d at 1190 (internal quotations and citations omitted).

## PRELIMINARY MATTERS

### a. Motion to Seal

As part of their briefing, the parties jointly move to have certain documents related to GEO's policies, procedures, and schedules file under seal. According to the parties, because GEO operates a detention facility, its policies and procedures are "significantly more sensitive than [those of] a typical corporation, because such documents directly impact the safety and privacy of detainees and officers." Joint Briefing in Support of Motion to Seal, Dkt. 70, at 1. Specifically, these documents contain policies related to weapon locations, officer schedules and movements, officer training, security protocols, emergency response policies, entrance and exit controls, and transfers of detention facility keys. *Id.* The parties argue that public access to these documents could compromise the safety of employees and detainees and therefore should be kept under seal.

Although there is a federal common law right to access public court records, that right is not absolute. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). Courts in the Ninth Circuit evaluate requests to seal under different standards depending on the nature of the underlying motion. For records attached to dispositive motions, the moving party must demonstrate a "compelling reason" to keep documents under seal. *See Kamakana v. City & Cty. Of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). For records attached to non-dispositive motions, "'a good cause' showing . . . will suffice." *Id.* at 1180. Unless the denial of a motion for class certification would constitute the death knell of a case, "the vast majority of courts within this circuit" treat motions for class certification as non-dispositive motions to which the "good cause" sealing standard applies. *Dugan v. Lloyds TSB Bank, PLC,* 2013 WL 1435223, *1 (N.D. Cal. 2013).

1    Denial of class certification would not constitute the "death knell" of this action.
2 This is not a situation in which the individual plaintiffs have suffered *de minimis* harm. As
3 GEO acknowledged when it removed this case from state court, Ramirez's individual
4 claims alone exceed $145,000. *See* Notice of Removal, Dkt. 1, at 21. Given the amount
5 at stake, he would presumably have financial incentive to pursue individual litigation even
6 if he could not do so on behalf of a class. The Court therefore finds the underlying motion
7 for class certification non-dispositive, and documents attached to it must only meet the
8 "good cause" standard to be filed under seal.

9    The parties have demonstrated "good cause" here. If made public, the documents
10 at issue could jeopardize the safety of employees and detainees at the Facility. The
11 documents reveal when detention officers go on break, what equipment and weapons
12 particular officers carry, when and how detainee counts are conducted, the location of
13 keys, and how officers are expected to respond to certain emergency situations. Limiting
14 the spread of this information is important to protect both employees and detainees from
15 harm. The Court therefore finds the "good cause" standard met and **GRANTS** the parties'
16 Motions to File Documents under Seal. Dkts. 48, 84. The documents conditionally lodged
17 under seal in Docket Entries 49 and 85 are ordered **SEALED** pending further order of the
18 Court.

19    **b.    Evidentiary Objections**

20    Ramirez and GEO have both lodged evidentiary objections. GEO objects to
21 various portions of Ramirez's declaration as inadmissible opinion testimony. *See* Dkt.
22 71-5. It also objects to evidence submitted for the first time in Ramirez's reply brief. *See*
23 Dkt. 88-1.

24    As to the evidence submitted for the first time in reply, GEO's objection is
25 **OVERRULED** because the Court specifically permitted GEO to file a sur-reply to address
26 this newly introduced evidence. *See* Dkt. 87. GEO's remaining objections are also
27 **OVERRULED** because a motion for certification is a preliminary procedure and courts
28 don't require strict adherence to the Federal Rules of Evidence. *See Dominguez v.*

*Schwarzenegger*, 270 F.R.D. 477, 483 n.5 (N.D. Cal. 2010) ("[E]vidence presented in support of class certification need not be admissible at trial.")

### c. Judicial Notice

GEO requests that the Court take judicial notice of various trial court documents from *Weldon v. GEO Corrections and Detention, LLC*, Case No. BCV-16-102833 (Kern Cty. Sup. Ct. 2016) in support of its opposition to the motion for class certification. Dkt. 71-5. GEO's request is **GRANTED** and the Court will take judicial notice of those documents to the extent they are relevant.

## DISCUSSION

Ramirez seeks to certify one class and two subclasses:

> **Class**: All current and former employees who worked as a Correctional Officer or Assistant Shift Supervisor at GEO's Western Region Detention Facility from August 9, 2014 to present.
>
> **Ten Hour Shift Subclass**: All Class Members who worked a shift of ten hours or more without receiving a second 30 minute duty-free meal break.
>
> **Waiting Time Penalty Subclass**: All Class Members who separated from their employment with GEO between August 9, 2014 to the present.

Motion for Class Certification ("Motion"), Dkt. 50, at 2-3.

GEO's opposition focuses primarily on what it sees as Ramirez's inability to show commonality (and the related requirement of predominance). But GEO also argues that even if there are common questions, Ramirez's claims are not typical and that he is an inadequate representative. The Court will address each requirement of Rule 23 in turn, with a focus on commonality.

### a. Numerosity and Superiority

The parties largely agree that the numerosity and superiority requirements are met here. As to numerosity, there are "at least 60 Correctional Officers and Assistant Shift Supervisors" who are members of the putative class, which the parties agree meets the

requirement of Rule 23(a)(1). Motion at 7. As to superiority, the parties have submitted no evidence of other pending litigation that would render a class action an inferior method for adjudicating these claims. The Court finds these two requirements are satisfied.

### b. Commonality and Predominance

Commonality is the heart of this motion for class certification. Ramirez submits that there are seven separate common questions that could form the basis for a class[1]:

1. Whether GEO must compensate class members for the time spent passing through security checks;
2. Whether GEO's policy denies employees a reasonable opportunity to take compliant meal breaks;
3. Whether GEO provided second meal breaks;
4. Whether GEO authorized and permitted off-duty rest breaks;
5. Whether GEO's rounding policy resulted in a systematic underpayment of employees;
6. Whether GEO was obligated to reimburse class members for duty belts; and
7. Whether GEO issued accurate wage statements.

Although many of the issues bleed together in the parties' briefing, Ramirez's proposed common issues break down into three basic categories: (1) Questions 1-4, which are that GEO provided insufficient meal and rest breaks for its employees ("Rest Break Violations"), (2) Questions 5 and 7, which are that GEO's recordkeeping and pay statements were inadequate as a matter of law ("Recordkeeping Violations"); and (3) Question 6, which is whether GEO failed to reimburse employees for the purchase of duty belts ("Reimbursement Violations"). The Court finds neither the Rest Break Violations nor the Reimbursement Violations can form the basis for a class action because individual questions predominate. The Recordkeeping Violations, however, are amenable to class-wide adjudication.

---

[1] Ramirez actually lists two other questions: (1) whether GEO violated California's Unfair Competition Law and (2) whether GEO failed to pay all wages due upon termination of employment. These two questions rise and fall with the other claims, so they are not addressed specifically in this opinion. These class claims survive to the extent their predicate claims do.

### *i.* *Meal and Rest Break Violations*

Ramirez's primary contention in this suit is that GEO for years maintained meal and rest break policies that violated California labor law, which generally requires that employees be "relieve[d] . . . of all duty" during breaks. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1040 (2012) (citing Cal. Lab. Code § 226.7). GEO did this in several ways. First, Ramirez claims, if employees chose to take their lunch breaks inside the Facility, GEO required that they "quickly be recalled to duty" in the event of an emergency. *See* Plaintiff's Supplemental Appendix ("SPA") at 383. This meant that employees were always subject to recall and were therefore denied truly duty-free meal and rest breaks. That officers were required to keep their radios on "at all times" in order to respond to emergencies also implied that they were not truly relieved of duty during breaks. *See, e.g.,* Plaintiff's Appendix ("PA") at 122.

Second, employees who elected to leave the Facility for their lunch breaks did not receive the full thirty minutes required by California law because GEO did not account for time spent going through security. GEO instructed employees who left during their shift to "be mindful of entrance procedure requirements and plan their schedule accordingly." *See* PA at 96. Ramirez argues that whether time spent in these security lines is "hours worked" under California law is a common question that can be answered for the class as a whole. If the answer is yes, GEO not only violated the law by failing to pay wages for all hours worked, it also failed to provide compliant 30-minute meal breaks.

In response, GEO argues that there is no evidence any of its policies violated California law and that, in any event, individual questions of liability predominate over common ones. It argues, for example, that Ramirez's "security time" claim fails because GEO's "practice is to provide Officers up to 37 minutes for meal periods, . . . 7 minutes more than required by law." *See* Opposition, Dkt. 71, at 13. This extra seven minutes more than covered the "seconds" it took employees to be waived through security. *Id.* As to Ramirez's "emergency response" argument, Geo submits that it has a blanket policy prohibiting "any work activity while on break" which supersedes any other policy

addressing call-ups during an emergency. According to GEO, the emergency call-up procedures that Ramirez identifies apply only to off-duty officers—that is, officers not scheduled to work who might be asked to come in to help with an emergency—not to on-duty officers who are simply on break. Finally, GEO also notes that Ramirez himself admitted during his deposition that employees were specifically instructed to turn their radios *off* during breaks, which precludes any finding that these employees were on duty. *See* Ly Decl., Dkt. 71-4, Ex. 2 at 30:11-14 ("[Q: Y]ou understood from the briefing that radios were supposed to be off in the break room, correct? A: Correct.").

As this Court has recognized in previous cases, a plaintiff attempting to prove commonality must show their employer "violated California law not just on paper, but also in practice and in a consistent way that would permit classwide adjudication." *Towle v. Cummins Pac., LLC*, 2018 WL 5785337, at *6 (S.D. Cal. 2018); *see also Cortes v. Mkt. Connect Grp., Inc.*, 2015 WL 5772857, at *7 (S.D. Cal. 2015) (Where "there is no good evidence showing the entire class was subject to the same non-compliant practice, . . . there is . . . no question common to the class."). Here there's no evidence that that the allegedly unlawful meal and rest break policies have been applied in a way that would permit common resolution. As discussed above, Ramirez has submitted a policy (the emergency procedures policy) that he alleges violates California law by requiring off-duty employees to remain on duty for emergency purposes while on break. But even assuming that this emergency policy superseded the more general GEO policy that employees be relieved of all duty during meal and rest breaks, Ramirez has submitted no evidence that any employee was ever denied a break under that policy. Indeed, Ramirez was not aware of GEO's emergency procedures during his employment at GEO and could not recall anyone ever being denied a full rest break as a result of those procedures. Finding a violation would not be possible on a class-wide basis; it would require testimony from each officer regarding whether they believed GEO's plans required them to monitor radios during breaks and whether they had, in fact, missed breaks due to GEO's emergency

1  policy. This type of individualized inquiry is precisely what the Rule 23 requirements are
2  designed to avoid.

3  Ramirez's "security time" argument fares no better. Even if the Court were to
4  ignore GEO's evidence that (1) it allowed employees 37-minute breaks to account for
5  security times, and (2) employees spent no time at security because they were simply
6  waived through the scanners, Ramirez still hasn't met his burden of showing that the
7  "security time" question could be resolved through common proof. As GEO points out,
8  its records do not reflect whether a given break was taken inside or outside the facility.
9  Determining the total number of breaks for the class that were cut short by a security
10 screening would require each officer to testify as to the number and location of breaks
11 they took. Further complicating things, some officers may have voluntarily taken breaks
12 less than 30 (or 37) minutes in length, which frustrates any effort to quantify damages on
13 a class-wide basis. As such, even if there was a common practice of shortening breaks
14 by requiring security screenings, there is no common way to *prove* that violation. *See In
15 re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009)
16 (reversing a district court's decision to certify a class action in part because of "'serious
17 issues regarding individual variations' that were not susceptible to common proof.").

18 Finally, Ramirez argues that a class could be certified based on GEO's failure to
19 provide a second meal break when its employees worked more than ten hours, in violation
20 of California law. *See* Cal. Lab. Code § 512(a) ("An employer shall not employ an
21 employee for a work period of more than 10 hours per day without providing the employee
22 with a second meal period of not less than 30 minutes, except that if the total hours
23 worked is no more than 12 hours, the second meal period may be waived by mutual
24 consent of the employer . . . ."). As support for this argument, Ramirez points to one
25 twelve-hour shift he worked on May 6, 2017 in which he did not take a second meal period
26 and was not paid a one-hour premium for missing the break. But this question cannot
27 form the basis for class certification because California law permits an employee to
28 voluntarily waive a second meal break, and GEO has produced three separate signed

waivers—including one from May 6, 2017—in which Ramirez acknowledges that he is voluntarily foregoing his second meal period. *See* Londono Decl., Dkt 71-2, Ex. 4. Because Ramirez concedes that GEO's second-meal policy is lawful on its face, any violation would have to be determined on a case-by-case basis, which precludes certification on this issue.

### *ii.* *Recordkeeping Violations*

While Ramirez's Rest Break Violations may not amenable to class-wide adjudication, his alleged Recordkeeping Violations fare better. The two violations in this category—that GEO improperly rounded employee hours and that its pay stubs improperly accounted for employee overtime—differ in substance, but they are unified by the fact that each turns on GEO's recordkeeping practices. Such issues are common to the class and do not depend on individual determinations to find liability.

First, Ramirez alleges GEO's time-keeping system systematically undercounted the number of hours worked by rounding an employee's time to the nearest quarter-hour. According to Ramirez, employees were required to clock in early in order to arrive promptly for their pre-shift meeting. But these same employees were not permitted to clock out early because they had to wait for the next shift to relieve them. This resulted in extended shifts that were often rounded down because of GEO's time-keeping policies, which Ramirez alleges violates California labor law. *See Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1009 (9th Cir. 2018) ("A rounding-time policy is permissible under California law if it is fair and neutral on its face and 'it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have *actually worked*.") (citing *See's Candy Shops, Inc. v. Super. Ct.*, 210 Cal.App.4th 889, 895 (2012)). Whether this rounding scheme was appropriate under California law is, according to Ramirez, a question common to the class.

Similarly, Ramirez alleges that GEO's wage statements violate California Labor Code section 226—which requires that pay stubs accurately state the number of hours worked and the rate of pay—because they show the overtime hourly rate as 0.5 times the

regular hourly rate rather than 1.5 times the regular hourly rate. *See, e.g.,* PA at 370. This irregularity means that class members are required to add up their regular and overtime rates to confirm that the totals are correct and that they have been paid properly. Again, because all employees received similarly defective wage statements, whether the statements were unlawful is, according to Ramirez, a common question.

The Court agrees that these are common issues that can be addressed on a class-wide basis. GEO's arguments to the contrary are unavailing. GEO argues, for example, that the "rounding" issue cannot be litigated collectively because (1) there was no uniform policy requiring employees to clock in early and (2) "shift briefings start at varying times depending on the supervisor leading the briefing." Opp. at 20. But whether GEO had such a policy can easily be inferred from a combination of written policies and the time records themselves. If it's the case that most employees clocked in well before their shift was scheduled to start—a determination that should be easy to make from GEO's time records—that would give rise to a strong inference that there was an implicit company-wide policy requiring employees to arrive early. Calculating damages on this issue would also be simple. All that's required is calculating the amount of wages that *should* have been paid in the absence of rounding and subtracting the amount that *was* paid with the rounding scheme in place. A large disparity between those numbers would likewise suggest that the rounding scheme was impermissible.

The alleged wage statement violations are also amenable to class-wide resolution. These violations are present on each wage statement, and damages would be easily calculable for the class as a whole. In *Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058, 1072 (N.D. Cal. 2019), for example, the Court was able to calculate damages related to improper wage statements by having an expert tally the number of statements on which a violation was present. The expert then assessed a $50 or $100 "penalty" for each violation—the amount called for by California Labor Code § 226(e)—depending on whether it was the first violation or a subsequent violation. Finally, the expert summed all

1 the penalties to reach a total damages estimate. A similar method could be implemented
2 here to manage these claims on a class-wide basis.[2]

3     In short, the Court finds that these two narrow questions—whether GEO's rounding
4 policy was permissible and whether GEO's wage statements violated California law—are
5 common to the class.[3] These common questions predominate over individual questions
6 and are therefore appropriate for class treatment.

###        *iii.*     *Reimbursement Violations*

8     Ramirez's final substantive claim is that GEO required its employees to purchase
9 duty belts but failed to properly reimburse employees for these purchases. *See* Cal. Lab.
10 Code § 2802 ("An employer shall indemnify his or her employee for all necessary
11 expenditures or losses incurred by the employee in direct consequence of the discharge
12 of his or her duties . . . ."). In his view, whether these belts were "necessary" equipment
13 for class members and whether GEO had any policy for reimbursing class members for
14 these purchases are common questions that permit certification.

15     But Ramirez has submitted no evidence that GEO's duty-belt reimbursement
16 policy was applied uniformly to the class. Indeed, Ramirez admitted in his deposition that
17 GEO did not require duty belts for most employees, but simply "preferred" employees to
18 have one. *See* PA at 314. GEO has submitted its own evidence showing that only a
19 certain category of employees, those working in the Transport Officer Post, were required
20 to purchase duty belts. *See* Nelson Decl., Dkt. 71-1, at ¶ 20. The company provided

---

[2] GEO argues that the wage statement violations cannot be certified for class-wide adjudication because similar claims "will be released on a class-wide basis in *Weldon v. GEO Corrections and Detention, LLC* through May 10, 2019." Opp. at 23, n.13. Although the Court has taken judicial notice of certain documents related to the *Weldon* case, it does not have a copy of the settlement terms, nor any evidence that these claims have been released. If the claims have been released (or are released after certification in this case), GEO may move to have the wage statement claims here dismissed.

[3] The Court rejects GEO's argument that arbitration agreements between GEO and approximately seventeen class members precludes certification. Even if a small number of employees signed agreements before this case was filed, these issues can be handled at the claims-administration stage if those employees file claims.

belts to these officers at no cost. *Id.* But even setting aside the question of whether GEO's reimbursement policy was sufficient, the fact that only some of the class members were required to purchase duty belts means that this question is not common to the class and cannot form the basis for class certification. Further, there is no evidence that Ramirez himself fell within the category of employees required to purchase a duty belt, so he couldn't serve as an adequate representative for those employees even if the Court were inclined to form a sub-class.

### c. Typicality and Adequacy

GEO submits that even if the commonality and predominance requirements are satisfied, a class still shouldn't be certified because (1) Ramirez's claims are atypical and (2) Ramirez could not adequately represent the interests of the class. The gist of GEO's argument is that there is an inherent conflict of interest between Assistant Supervisors and the Corrections Officers[4] they supervise, even though both categories of employees fall within the proposed class. Assistant Supervisors are responsible for implementing the company's rest break policies, which the class as a whole now challenges. This conflict, in GEO's view, means that Ramirez's claims are not typical of the class as a whole and that his counsel cannot adequately represent all members of the class. To be sure, other courts in the Ninth Circuit have recognized that dissimilarities like this may render a plaintiff atypical or inadequate. *See, e.g., Ellerd v. Cty. of Los Angeles*, 2009 WL 982077, at *5 (C.D. Cal. 2009) ("In order to prove their claims, the social workers will have to show that their supervisors violated federal law and defendant's official policies by telling the social workers not to record their overtime. Given this inherent conflict, the Court cannot conclude that plaintiffs' counsel can adequately represent both the social workers and the supervisors."). But the Court is not certifying the issue of whether GEO's meal and rest break policies were lawful. The issues for class-wide adjudication—

---

[4] Ramirez was originally hired as a Corrections Officer. He was promoted to Assistant Supervisor at the end of 2005 before being demoted to Corrections Officer again in 2016. *See* Londono Decl. ¶¶ 4.

whether GEO improperly rounded its employees' time and whether its pay statements complied with California law—are common to both Corrections Officers and their Supervisors. The Court therefore finds the typicality and adequacy requirements met here.

## CONCLUSION

For these reasons, the Court **GRANTS IN PART AND DENIES IN PART** Ramirez's motion for class certification. Dkt. 50. The Court **CERTIFIES** one class and one sub-class as follows:

> **Class**: All current and former employees who worked as a Correctional Officer or Assistant Shift Supervisor at GEO's Western Region Detention Facility from August 9, 2014 to present.
>
> **Waiting Time Penalty Subclass**: All Class Members who separated from their employment with GEO between August 9, 2014 to present.

But the class claims are limited only to those common questions found above—namely, whether GEO improperly rounded employee time and whether GEO's pay statements complied with California law. Related claims, such as whether GEO violated California's Unfair Competition Law and whether GEO failed to pay all wages due upon termination of employment, may be litigated on behalf of the class only insofar as those claims are predicated on these two narrow issues. All other claims must be litigated on an individual basis. Plaintiff Raymond Ramirez shall serve as class representative, and his attorneys at the Patterson Law Group, APC shall serve as class counsel.

The parties' Motions to Seal, (Dkts. 48, 84), are **GRANTED**, as is GEO's Request for Judicial Notice. Dkt. 71-5. The parties' various evidentiary objections are **OVERRULED**.

**IT IS SO ORDERED**.

Dated: December 11, 2019

**HONORABLE LARRY ALAN BURNS**
Chief United States District Judge